Martin, J.
The petition charges the defendant as fraudulently giving a pass to the plain *426 tiff’s slave, wherein she effected her escape. The defendant relied on the general issue principally. The plaintiff had a verdict and judgment, and the defendant appealed.
West’n District.
Sept. 1821.
The statement of facts shews the plaintiff's witnesses fully established that he was for several years in possession of the wench named in the petition, as one of his slaves ; that she was taken up in a neighbouring parish, but released on producing a pass given her by the defendant.
M'Micken deposed, that in the year 1812, the plaintiff lived about a couple of miles from him, and he hired from him the slave named in the petition, which he then held as his slave; that one day she came to the witness, fell on her knees, in tears, saying that if she had her right she would be free, and handed him a paper, purporting to be her deed of manumission, which she said was handed her by one Charles Henderson, whose name appeared to be subscribed thereto; she requested him to keep it, till she could make a trusty friend to take care of it for her, in case she was sent away and sold in a distant country; for she was afraid her master would get it from her, as he had frequently demanded it from *427 her, and she had always denied having it. He threatened to whip her. On examining the paper, the witness found the period at which she was to enjoy her freedom, was not yet arrived, nor was the deed properly authenticated; and he informed her he would procure one properly authenticated, by the time she was to be free, which was done, and the woman has since passed, and been reputed a free woman of color, in the parish of Feliciana, and the state of Mississippi, with these papers, which have been read to the plaintiff.
A copy of the document is annexed to the record, viz. a manumission deed executed by Joshua Barnes, of Ohio county, state of Kentucky, manumitting his negro woman slave Minthy, at the time she arrives at the age of 35, viz, in August 1817, bearing date August 12th, 1805. The deed is certified by the clerk of Ohio county court, at the August term, 1805, and ordered to be recorded. The said clerk has certified a true copy of the order, and the deed has been taken from the records of his office, and the presiding magistrate of the court has given his certificate, according to the act of congress, and his signature *428 and official capacity, are attested by the governor under the seal of the state.
It is contended by the plaintiff, that the freedom of the slave cannot be tried incidentally in this case; and that if it can, there is no evidence that Joshua Barnes, who appears to have manumitted the woman, was her master at the time.
I think the freedom of the slave may well be offered to disprove the allegation, that the person to whom the defendant gave a pass, was not a slave of the plaintiff's; that the defendant has a right to establish this fact in the present suit, without waiting tor the woman's assertion of her freedom, in a suit against the present plaintiff.
That the deed of manumission having been duly acknowleged and ordered in open court to be recorded, is a strong presumptive evidence of the freedom of the woman; and as no evidence contradicts it, it ought to have been considered as conclusive by the jury.
At the time of the alleged injury in April 1819, the woman had been free for about twenty months. She was not then the plaintiff’s slave, as is alleged in the petition.
It is said she was de facto the plaintiff’s *429 slave, and the defendant had no right to aid her in shaking off the yoke of slavery.
I apprehend any man may very conscientiously assist a person, unlawfully held in slavery, to regain his freedom. The attempt is, indeed, made at the peril of the party affording the aid, who is liable in damages or not, as the freedom or slavery is finally established.
The original of the deed of manumission, ought, it is said, to have been accounted for before the official copy from the record was allowed to be read, and we are said to have only the copy of a copy.
This objection ought to have been made to the reading of the document below; and I am not clear that it ought, to have prevailed in a suit between persons, neither of whom were parties to the deed principally; as till the woman was proven to be free, she could not have established, by her oath, the absence of the deed from her friends, or control, nor her ignorance of the place of its existence. The deed was never in the defendant’s possession, and circumstances prevented his accounting for its absence.
We ought to reverse the judgment of the district court, and ours ought to be for the defendant.
Johnson for the plaintiff, Baldwin for the defendant.